IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARLA BEEN, *individually and on behalf of all others similarly situated*,<br><br>    Plaintiffs,<br><br>v.<br><br>EDGEWELL PERSONAL CARE COMPANY; EDGEWELL PERSONAL CARE BRANDS, LLC; EDGEWELL PERSONAL CARE, LLC; *and*,<br><br>DOES 1 *through* 10,<br><br>    Defendants. | Case No. 19SL-CC02900<br><br>Jury Trial Demanded |

## NOTICE OF REMOVAL

Defendants Edgewell Personal Care Company, Edgewell Personal Care Brands, LLC, and Edgewell Personal Care, LLC (collectively, "Defendants"), through undersigned counsel, hereby remove the above-captioned action from the Circuit Court of St. Louis County, Missouri to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. §§ 1441, 1446 (2009), and the Class Action Fairness Act of 2005 ("CAFA") codified in pertinent part at 28 U.S.C. §§ 1332(d) and 1453 (2009). In support of this Notice, Defendants state as follows:

1. On July 17, 2019, Plaintiff Carla Been ("Plaintiff") filed a putative class action against Defendants in the Circuit Court of St. Louis County, Missouri captioned, *Been v. Edgewell Personal Care Company, et al.* (Case No. 19SL-CC02900) (the "Action").

2. Plaintiff characterizes the suit as a "Pink Tax" lawsuit and further alleges Defendants violated Missouri law by purportedly charging a higher price for women's razors than for comparable men's razors. *See* Pet. ¶ 1. Plaintiff alleges Defendants violated the Missouri Merchandising Practices Act ("MMPA") (Count I) and seeks Injunctive Relief (Count II).

3. Plaintiff alleges that she, and members of a putative class, purchased certain Schick® branded razor products in Missouri during a five-year period beginning July 17, 2014. *See* Pet. ¶ 17.

4. As set forth below, Defendants have satisfied all jurisdictional and procedural requirements for removal of this action. CAFA jurisdiction exists because (1) the asserted class has at least 100 putative members; (2) the aggregate amount in controversy "exceeds the sum or value of $5,000,000;" and (3) at least one class member "is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2), (d)(5). In addition, Defendants have removed this case within thirty days of service of the Action.

## I. **DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL**

5. Plaintiff served Defendant Edgewell Personal Care Company ("Edgewell") on September 6, 2019.  *See* **Exhibit 1** (State Court File).  Accordingly, this Notice of Removal is timely filed within thirty (30) days of that date, as required by 28 U.S.C. § 1446(b).

6. Plaintiffs have not yet served Defendants Edgewell Personal Care Brands, LLC ("EPC Brands") or Edgewell Personal Care, LLC ("EPC Care"), but EPC Brands and EPC Care consent to and join in this Notice of Removal and the removal it accomplishes.

7. The Circuit Court of St. Louis, Missouri is located within the Eastern District of Missouri, Eastern Division. Therefore, venue is proper pursuant to 28 U.S.C. § 105(a)(1) because it is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

8. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Edgewell, which papers include the summons and petition, is attached hereto and incorporated herein as Exhibit 1.

9. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Circuit Court of St. Louis County, Missouri. Pursuant to local guidelines, Defendants will file their "Notice of Filing of Notice of Removal to State Court" and "Notice to Plaintiff" via separate ECF entries.

10. Pursuant to E.D.Mo. L.R. 3-2.02 and local guidelines, Defendants' Civil Cover Sheet and Original Filing Form are attached hereto and incorporated herein as **Exhibit 2** and **Exhibit 3**, respectively.

## II.   THIS COURT HAS JURISDICTION OF THIS ACTION UNDER CAFA.

11. Defendants remove this Action pursuant to CAFA. *See* 28 U.S.C. § 1332(d). Congress passed CAFA to expand federal jurisdiction over class actions. "The language and structure of CAFA indicate that Congress contemplated broad federal court jurisdiction with only narrow exceptions." *Westerfeld v. Independent Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) (quotations omitted).

12. Under CAFA, this Court has diversity jurisdiction of any asserted class action so long as (1) the asserted class has at least 100 putative members; (2) the aggregate amount in controversy "exceeds the sum or value of $5,000,000;" and (3) at least one class member is a citizen of a State different from any defendant. *See* 28 U.S.C. §§ 1332 (d)(2), (d)(5)-(6); *see also City of O'Fallon, Mo. v. CenturyLink, Inc.*, 930 F.Supp.2d 1035, 1039 (E.D. Mo. 2013) (citing, *inter alia*, 28 U.S.C. § 1332(d)(2) and (d)(5), and *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 788-89 (8th Cir. 2012)).

13. A "class action" includes any civil action filed under Federal Rule of Civil Procedure 23 or "similar State statute or rule of judicial procedure," 28 U.S.C. § 1332(d)(1)(B),

Case: 4:19-cv-02602-SRC   Doc. #:  1   Filed: 09/19/19   Page: 4 of 11 PageID #: 4

such as Rule 52.08 of the Missouri Rules of Civil Procedure, which Plaintiff invokes in this case. *See* Pet. ¶ 16.

14. The defendant's burden on removal is to show the prerequisites for federal jurisdiction by a preponderance of the evidence. *See Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). In support of removal, a defendant may rely on the plaintiff's allegations, which are assumed to be true, *see, e.g.*, *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 946 (8th Cir. 2012) (holding defendants established CAFA amount-in-controversy requirement based on "the face of the complaint alone"), as well as on affirmative evidence outside the pleadings, *see, e.g.*, *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887–88 (8th Cir. 2013) (holding defendants established CAFA amount-in-controversy requirement through submission of affidavit evidence); *Thomas v. Neomedic, Inc.*, Civil No. 13-1057, 2013 WL 5178200, n. 2 (D. Minn. Sept. 13, 2013) ("[D]efendants may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal . . . .") (quotation omitted).

15. In removing this action, Defendants have properly relied on the affirmative allegations of Plaintiff, as well as the evidence submitted in support of this Notice, to demonstrate this Court's jurisdiction.

### A. The Asserted Class Size Requirement is Satisfied.

16. Plaintiff affirmatively asserts that the putative class action she seeks to represent includes "tens of thousands, if not hundreds of thousands, of individuals on a statewide basis." Pet. ¶ 18.

17. That allegation by itself is sufficient to establish CAFA's 100-person minimum class-size threshold. *See Bell*, 557 F.3d at 955 (observing that plaintiff's allegations conceded that

4

CORE/3006951.0046/154786147.1

"two of the three requirements to support jurisdiction under CAFA were satisfied (minimal diversity and 100 or more class members).").

**B.     The Action Places More Than $5,000,000 in Controversy.**

18.     While Defendants dispute that Plaintiff has stated any viable claims or that any damages whatsoever are owed to Plaintiff or the asserted class, it is demonstrably evident that Plaintiff's proposed claims place more than $5,000,000 in controversy.

19.     "Under the preponderance of evidence standard, the jurisdictional fact is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." *O'Fallon*, 930 F.Supp.2d at 1041 (citation omitted; emphasis original). "The removing party's burden of describing how the controversy exceeds $5 million constitutes a pleading requirement, not a demand for proof.  Discovery and trial come later." *Hartis*, 694 F.3d at 945 (quotation omitted).  "Punitive damages, as well as allowable attorney fees, are included in calculating the amount in controversy." *O'Fallon*, 930 F.Supp.2d at 1041 (citation omitted).

20.     "The amount in controversy is determined by the value to the plaintiff of the right sought be enforced." *Advance America Servicing of Arkansas, Inc. v. McGinnis*, 526 F.3d 1170, 1173 (8th Cir. 2008).  A defendant may expressly deny that the plaintiff is entitled to any relief, but at the same time rely on "an examination of the relief requested in the complaint" to determine the amount in controversy. *City of University City, Missouri v. AT&T Wireless Services, Inc.*, 229 F.Supp.2d 927, 934 (E.D. Mo. 2002) (citation omitted).

21.     In this Action, Plaintiff seeks compensatory damages "in the full amount of the Product Plaintiffs paid to Defendants" (*i.e.*, the full purchase price). Pet. ¶ 82.  Plaintiff alleges she represents "tens of thousands, if not hundreds of thousands, of individuals on a statewide basis." Pet. ¶ 18. Plaintiff purchased Schick® Quattro for Women® Razors for $15.48. Pet. ¶ 55.

5

At a minimum, each putative class member would represent at least a one-time purchase similar to Plaintiff's purchase.

22. Defendants easily meet the amount in controversy requirement, on the face of the Petition, by alleging hundreds of thousands of purchases. *See, e.g., Hartis*, 694 F.3d at 944-46 (determining amount in controversy met on "the face of the complaint alone" because plaintiffs claimed a typical overcharge of $12, alleged that a "large" number of over 1.2 million transactions involved overcharges, and "[e]ven if we assume that a 'large' number of these transactions only equates to one-half—or 603,500 transactions—the jurisdictional amount is still easily satisfied. Multiplying 603,500 transactions by $12 yields $7,242,000."); *Grawitch v. Charter Communications, Inc.*, 750 F.3d 956, 960 (8th Cir. 2014) (finding amount in controversy satisfied where plaintiff alleged a class of at least 50,000 members and sought to recover up to $50,000 in damages per class member); *Martin v. State Farm Mutual Automobile Ins. Co.¸* No. 3:10-0144, 2010 WL 3259418, *5 (S.D. W. Va. August 18, 2010) ("Multiplying the individual damage amounts pled in the complaint by the number of persons in an alleged class is a reasonable method for determining the amount in controversy"). Because Plaintiff alleges there is more than $5,000,000 in controversy, the CAFA amount-in-controversy requirement is satisfied on the face of her Petition.

23. Plaintiff's demand for punitive damages and attorneys' fees further increase the amount in controversy. Pet. ¶¶ 84-85, Prayer for Relief. The MMPA allows plaintiffs to seek punitive damages and attorneys' fees. *See* MO. REV. STAT. § 407.025.1 (2019).

24. Plaintiff's demand for punitive damages and fees, taken together with the attached evidence, prove that there is more than $5,000,000 in controversy. During the proposed class period (*i.e.*, July 17, 2014 through July 17, 2019), Missouri sales of Schick® Quattro for Women®

6

Razors, for both regular and sensitive, were over $1,300,000.  *See* **Exhibit 4** (Declaration of C. Luca).  While the exact figure over $1,300,000 will be determined in discovery, it is reasonable and conservative to expect that a jury might award more than $3,700,000 in punitive damages and attorneys' fees, thereby satisfying the amount-in-controversy requirement.

25. It is well-established that punitive damages several magnitudes higher than the asserted compensatory damages may be included in determining the amount in controversy if they are recoverable under applicable law. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (approving a 3:1 ratio of punitive damages to compensatory damages; "[Prior cases] demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution."); *Bass v. Carmax Auto Superstores, Inc.*, No. 07-0883-CV-W-ODS, 2008 WL 441962, at *1-3 (W.D. Mo. Feb. 14, 2008) ("Thus, total actual damages would be $658,431. Focusing for the moment on Count II and the availability of punitive damages, an award of slightly less than $4.4 million-or approximately 6.7 times the actual damages-would bring the total award to over $5 million. Such an award would likely be constitutionally acceptable; more importantly, the Court cannot say such an award is legally impermissible."); *Raskas*, 719 F.3d at 887-88 ("When considering the total sales [of $3.3 million] in conjunction with the request for punitive damages the amount in controversy requirement is met."); *Brown v. City Chevrolet, LLC*, No. 09-0642-CV-W-GAF, 2009 WL 3485833, at *1 (W.D. Mo. Oct. 28, 2009) (compensatory damages "could amount to roughly $1,004,099" which "leaves a $3,995,992 difference between the amount of actual damages and the $5,000,001 jurisdictional requirement. A fact finder could legally and permissibly award such an amount as punitive damages (*i.e.*, a little more than 3.98 times actual damages)."); *Kates v. Chad Franklin Nat. Auto Sales North, LLC*, No. 08-0384-CV-W-FJG, 2008 WL 3065009, at *2 n.5

7

(W.D. Mo. July 30, 2008) (finding that amount in controversy met because the "Court can easily imagine how $900,000 in actual damages, combined with punitive damages and attorney's fees, could exceed the jurisdictional threshold.").

26. "Missouri case law supports the granting of a large amount of punitive damages in an MMPA claim, even when the amount of actual damages awarded on the claim is considerably less." *Mishra v. Coleman Motors, LLC*, Case No. 4:16-cv-01553-PLC, 2017 WL 994868, at *5 (E.D. Mo. Mar. 15, 2017). *See, e.g., Lewellen v. Franklin,* 441 S.W.3d 136, 139 (Mo. 2014) (affirming punitive damages awards totaling $1,000,000, where actual damages were just $25,000); and *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 195 (Mo. Ct. App. 2013) (actual damages totaling $11,007.81; punitive damages totaling $881,789.05; and attorneys' fees totaling $165,250).

27. Based on Plaintiff's allegations and the evidence attached hereto, a jury might enter an award in excess of $5,000,000. The CAFA jurisdictional requirement is therefore satisfied.

**C.     The Minimal Diversity Requirement is Satisfied.**

28. CAFA diversity exists if any putative class member and any defendant are citizens of different states. 28 U.S.C. § 1332(d); *see also Pudlowski v. The St. Louis Rams, LLC*, Case No. 4:16-cv-189, 2016 WL 5660237, at *1 (E.D. Mo. Sept. 29, 2016) (citing *Westerfeld*, 621 F.3d at 822).

29. CAFA modifies the rules of citizenship for a limited liability company, such that it is "deemed to be a citizen of the State where it has its principal place of business and the State under whose law it is organized." 28 U.S.C. § 1332(d)(10).

30. Plaintiff alleges she is a Missouri citizen. Pet. ¶ 6. She seeks to represent "[a]ll persons" who purchased the Product "in the State of Missouri," Pet. ¶ 17. Plaintiff's class

8

definition may include persons who purchased the Product in Missouri, but are not Missouri citizens.

31. Edgewell is a Missouri corporation, having its principal place of business in Shelton, Connecticut.  *See* **Exhibit 5** (Declaration of L. Austin).

32. Edgewell is the parent company to EPC Brands. *See* Ex. 5.  Edgewell does not manufacture or sell Schick® products. *Id.*

33. Plaintiff correctly alleges that EPC Brands is a Delaware limited liability company with its principal place of business in Shelton, Connecticut. Pet. ¶ 9. EPC Brands does not manufacture or sell Schick® products.  *See* Ex. 5.

34. Plaintiff correctly alleges that EPC Care is a Delaware limited liability company with its principal place of business in Shelton, Connecticut. Pet. ¶ 10.  EPC Care sells Schick® products. *See* Ex. 5.

35. Defendants meet CAFA's minimal diversity requirement because EPC Brands and EPC Care are diverse from Missouri putative class members. 28 U.S.C. § 1332(d).

36. Defendants further meet CAFA's minimal diversity requirement because Plaintiff's class definition includes citizens from *anywhere* so long as their purchases occurred in Missouri. *See* Pet. ¶ 17 ("[a]ll persons" who purchased the Product "in the State of Missouri.").

37. The putative class necessarily includes people who have never been citizens of Missouri, such as out-of-state students, members of the military, and resident foreign nationals – all of whom retain their former citizenship unless manifesting an intent to reside in Missouri indefinitely. *See, e.g., McMorris v. TJX Companies, Inc.*, 493 F.Supp.2d 158, 164-5 (D. Mass. 2007) (noting a "reasonable probability" that a class of Massachusetts residents had at least one non-citizen, satisfying CAFA); *Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005)

9

(for individuals, "[c]itizenship is determined by a person's physical presence in a state along with his intent to remain there indefinitely."); 15A MOORE'S FEDERAL PRACTICE – CIVIL § 102.37(11) (2019) ("Military personnel who reside in a state on military assignment but do not manifest an intent to abandon their former domicile continue to be deemed citizens of their former domicile."); and 15A MOORE'S FEDERAL PRACTICE – CIVIL § 102.37(6) (2019) (same as to students).

38. CAFA's minimal jurisdictional requirement is therefore satisfied.

### III. CONCLUSION

Defendants respectfully remove this action from the Circuit Court of St. Louis County, Missouri, bearing case number 19SL-CC02900, to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and the Class Action Fairness Action of 2005 ("CAFA") codified in pertinent part at 28 U.S.C. §§ 1332(d) and 1453.

Respectfully submitted,

**STINSON LLP**

By: */s/ Megan McCurdy*

John W. Moticka, Mo. 31760
7700 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105-1821
Telephone: (314) 863-0800
Facsimile: (314) 863-9388
john.moticka@stinson.com

Megan McCurdy, Mo. 60071
1201 Walnut Street, Suite 2900
Kansas City, Missouri, 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
megan.mccurdy@stinson.com

**ATTORNEYS FOR DEFENDANTS EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE BRANDS, LLC, AND EDGEWELL PERSONAL CARE, LLC**

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of September, 2019, the above and foregoing was filed with the Clerk of the Court through the CM/ECF system, which will send electronic notification to all counsel of record.

The undersigned also certifies that a copy of the foregoing was served upon the following counsel of record via email and by mailing a copy of the same to them, postage prepaid, in the United States Mail, to the address as shown below, on this 19th day of September, 2019:

Daniel F. Harvath, Esq.
Harvath Law Group, LLC
75 W. Lockwood, Suite # 1
Webster Groves, MO  63119
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*

*/s/ Megan McCurdy*
**ATTORNEYS FOR DEFENDANTS EDGEWELL PERSONAL CARE COMPANY, EDGEWELL PERSONAL CARE BRANDS, LLC, AND EDGEWELL PERSONAL CARE, LLC**

CORE/3006951.0046/154786147.1